UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE COUNTY OF LIVINGSTON and LIVINGSTON COUNTY BOARD, ) ) ) | |
| Plaintiffs, ) ) ) | |
| v. ) ) | Case No. 19-cv-01334-JES-JEH |
| PSA-DEWBERRY, INC., n/k/a DEWBERRY ARCHITECTS, INC., ) ) ) ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is before the Court on the Defendant's Motion to Dismiss for Failure to State a Claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 5. Plaintiffs filed a Response (Doc. 9), Defendant filed a Reply (Doc. 32) and Plaintiffs filed a Sur-Reply. Doc. 35. For the following reasons, the Motion is DENIED.

### Background

The following facts are taken from Plaintiffs' Complaint (Doc. 36)[1], which the Court accepts as true for the purposes of a motion to dismiss. *Fehlman v. Mankowski,* 74 F.4th 872, 874 (7th Cir. 2023).

On September 17, 2009, Plaintiffs the County of Livingston and the Livingston County Board (hereafter "Plaintiffs" or "the County") entered into a contract with Defendant PSA-Dewberry, Inc., now known as Dewberry Architects, Inc. (hereafter "Defendant" or "Dewberry") for design and construction of the Livingston County Law & Justice Center ("the Law & Justice Center"). Doc. 36 at 2; *see also* Doc. 5-3 at 1-14 (the contract). The Law & Justice Center was

---

[1] The Complaint was originally filed as part of the notice of removal. Doc. 1. For ease of reference, the Court separately docketed the Complaint.

1

substantially completed by Dewberry by September 27, 2011, and it now serves as the courthouse in Livingston County. Doc. 36 at 2.

On December 5, 2011, the County was notified by the Office of the Illinois Attorney General ("OAG") that the Law & Justice Center and the Livingston County Historic Courthouse (collectively "the Facilities") violated certain provisions of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq.* ("ADA"), and the Illinois Environmental Barriers Act, 410 ILCS 25/1 *et seq.* ("EBA"), as well as their respective implementing regulations as set forth in 28 C.F.R. Part 35 and the Illinois Accessibility Code, 71 Ill. Adm. Code § 400.110 *et seq.* ("IAC"). Doc. 36 at 2; *see also* Doc. 5-3 at 15-27 (OAG notification letter). Livingston County asked Dewberry to investigate and remedy these alleged violations and Dewberry agreed to do so. Doc. 36 at 2. To preserve their rights and avoid litigation expenses while allowing time for Dewberry to investigate and remedy the violations, the parties entered into a series of agreements tolling the statutes of limitation and repose. *Id.* at 3; *see also* Doc. 5-4 at 1-10 (the tolling agreements). All the while, the County entered into a settlement agreement with the OAG in 2017, which outlined the County's obligation to bring the Law & Justice Center into compliance with the ADA, EBA, and IAC. Doc. 36 at 7; *see also* Doc. 5-4 at 11-21.[2]

In 2019, the parties failed to enter into an additional tolling agreement, and so the final tolling agreement expired on September 15, 2019. Doc. 36 at 7. In response, the County filed suit on September 13, 2019, in the Circuit Court for the Eleventh Judicial Circuit, Livingston County, Illinois. *Id.* at 1.

---

[2] The settlement agreement was amended in 2019, in order to extend the deadline for the County to come into compliance with the relevant laws and regulations to March 31, 2020. Doc. 36. at 7; *see also* 5-4 at 22-25.

The County alleges that Dewberry breached its contract and committed negligence by failing to design the Facilities in accordance with the ADA, EBA, and IAC, and by failing or refusing to remedy the violations thereof. *Id.* at 9, 15.[3] As of the time of filing the Complaint, there were numerous outstanding violations that needed to be remedied, including: issues with the number and placement of accessible parking spots and issues with the signage for the accessible spots; the slopes of the ramp to the main ramp, adjoining surfaces, and certain sidewalks exceeding the maximum allowed slope; and several areas that failed to comply with requirements for wheelchair accessibility/maneuverability. *See id.* at 3-7.

On October 17, 2019, Dewberry removed the action to this Court under the Court's diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446. Doc. 1 at 1 (notice of removal). On October 30, 2019, Dewberry filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 5), supported by a Memorandum. Doc. 5-1.[4] On December 13, 2019, Plaintiffs filed their Response. Doc. 9. Shortly after the initial briefing concluded, the case was

---

[3] In the Complaint, Plaintiffs allege that Dewberry was contracted to design and construct the Law & Justice Center. But, the Complaint does not state that Dewberry was contracted to perform services on the Livingston County Historic Courthouse. Nor is it readily ascertainable from the contract that Dewberry was hired to perform such work. *See* Doc. 5-3 at 1-14. Yet, Plaintiffs claim that Dewberry is liable under breach of contract and negligence for failures concerning the "Facilities," which is defined in the Complaint to include both the Law & Justice Center as well as the Historic Courthouse. Moreover, the initial notification letter from the OAG seems to only cite ADA violations at the Law & Justice Center. *See* Doc. 5-3 at 15-27.

Nevertheless, on Dewberry's publicly accessible website, Defendant indicates that it "updated the historic 1875 courthouse for all non-court related activities." *See* LIVINGSTON COUNTY LAW & JUSTICE CENTER, *Bringing Court-Related Activities Under One Roof*, accessed on September 12, 2023 (available at https://www.dewberry.com/projects/livingston-county-law-justice-center). And, in contrast to the OAG notification letter, the settlement agreement between Plaintiffs and the OAG requires Plaintiffs to remedy violations at both the Law & Justice Center and the Historic Courthouse. *See* Doc. 5-4 at 10-21.

[4] Defendant also attached a copy of the Complaint to the Motion. *See* Doc. 5-2.

stayed on the parties' request. Text Order Dated December 23, 2019. During the following three years, some construction work was done to remedy a number of the violations on the Facilities' interior and exterior and the parties sought to reach a framework for settlement. Status Reports and Joint Motions to Continue Stay (Docs. 14-16, 18-22, 24-29).

But, on July 20, 2023, the parties filed a Joint Status Report stating that they were unable to resolve the matter, and so they sought to lift the stay and recommence litigation, beginning with the Motion to Dismiss filed in 2019. Doc. 30. The Court lifted the stay the next day. Text Order Dated July 21, 2023. After the stay was lifted, and with leave of Court, Defendant filed a Reply in support of the Motion. Doc. 32. Subsequently, and also with leave of Court, Plaintiffs filed a Sur-Reply. Doc. 35.

Notably, Defendant filed several exhibits with the Motion, including the contract at issue (Doc. 5-3 at 1-14); the notification letter from the OAG to the County indicating the Law & Justice Center's failure to comply with certain provisions of the ADA and EBA (Doc. 5-3 at 15-27); the tolling agreements (Doc. 5-4 at 1-10); and the settlement agreement and subsequent amendment between the OAG and the County (Doc. 5-4 at 11-25). Defendant avers that these exhibits were originally submitted with the Complaint, but were inadvertently omitted from the notice of removal. Doc. 5-1 at 3 n.2.

Plaintiffs do not contest the authenticity of the exhibits. In addition, the Court concludes that the exhibits are both "critical to the complaint and referred to in it." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("'A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'") (quoting *Geinosky v.*

*City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The Court finds, therefore, that it is appropriate to consider the documents in the motion to dismiss.

## Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing the motion, the Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the nonmovant. *See Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610, 612 (7th Cir. 2019). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Federal Preemption

"The preemption doctrine is grounded in the Constitution's Supremacy Clause." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 762 (7th Cir. 2008). The Supremacy Clause declares that federal law "shall be the supreme Law of the Land ... any Thing in the Constitution or Law of any State to the Contrary notwithstanding." U.S. Const. Art. VI., cl. 2. "Where state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617, 131 S. Ct. 2567, 180 L.Ed.2d 580 (2011) (internal quotation marks omitted). "Today's law recognizes three types of federal preemption: express preemption, field preemption, and conflict preemption." *Ye v.*

*GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 457 (7th Cir. 2023) (internal citation omitted). This case concerns conflict preemption.[5]

Conflict preemption occurs when "it would be 'impossible' ... to comply with both state and federal law or that state law ... constitutes an 'obstacle' to satisfying the purposes and objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir. 2019). A court should not find conflict preemption "unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012). "The challenger must show that applying the state law would do 'major damage' to clear and substantial federal interests." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) (quoting *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013)). Of relevance here, obstacle preemption can apply not only to positive enactments of state law but also to state law tort claims and breach of contract actions. *See*, *e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (holding that negligence action against a manufacturer was preempted because it conflicted with a federal agency standard); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 652-654 (7th Cir. 2015) (signifying that a court may not entertain a breach of contract action when the claim conflicts with federal law).

## Discussion

Dewberry argues that the Motion should be granted as Plaintiffs' state law breach of contract and negligence claims are preempted by Title II of the ADA. Doc. 5-1 at 2.[6]

---

[5] Conflict preemption is "sometimes referred to as 'obstacle' preemption." *McHenry County v. Kwame Raoul*, 44 F.4th 581, 591 (7th Cir. 2022).

[6] "The preferred procedure for raising a preemption defense is to assert it in the answer and move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), rather than raising the issue in a motion to dismiss." *Novotney v. Walgreen Co.*, ___F. Supp. 3d___, 2023 WL 4698149, at *2 (N.D. Ill July 20, 2023) (citing *Benson v. Fannie May Confections Brands, Inc.*,

Significantly, the question of whether state law breach of contract and negligence claims are preempted by Title II of the ADA is an issue of first impression in the Seventh Circuit. As such, the parties have dedicated a significant portion of their pleadings to identifying and briefing non-binding cases that address the issue *sub judice*, including decisions from the Fourth and Ninth Circuits. The Court addresses these decisions and others below. *See Barrientos v. Williams-Sonoma, Inc.*, 2023 WL 5720855, at *8 (N.D. Ill Sep. 1, 2023) ("In the absence of Seventh Circuit precedent, the Court may look to other Circuit opinions for guidance.") (citing *Est. of Escobedo v. Bender*, 600 F.3d 770, 782 (7th Cir. 2010)).[7]

In drawing on persuasive authorities, Dewberry asserts that the ADA imposes a non-delegable duty on state and local governments and that Plaintiffs' breach of contract and negligence claims are impermissible attempts to contract around, and otherwise insulate themselves from, their duties under the ADA. Doc. 5 at 5-6, 8. In other words, Dewberry argues that Plaintiffs' claims are prohibited *de facto* claims for **indemnification**. Doc. 32 at 4. Plaintiffs contend that their breach of contract and negligence claims do not conflict with federal law and federal objectives and so are not preempted. Doc. 9 at 4. Specifically, Plaintiffs emphasize that its claims merely, and permissibly, seek **contribution** from Defendant for Defendant's own negligence or wrongdoing. Doc. 35 at 3-5.[8]

---

944 F.3d 639, 645 (7th Cir. 2019)). Nevertheless, I shall consider Defendant's preemption argument at this stage because the briefings before the Court provide "all that is 'needed in order to ... rule on the defense.'" *Wardingley v. Ecovyst Catalyst Techs., LLC*, 639 F. Supp. 3d 803, 806 (N.D. Ind. 2022) (quoting *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010)).

[7] Defendant does not presently contest the underlying merits of Plaintiffs' claims as to negligence and breach of contract.

[8] Plaintiffs also argue that because disability accommodations were traditionally regulated by the states, the Court must exercise a presumption against preemption. Doc. 9 at 2. Plaintiffs further suggest that pursuant to 42 U.S.C § 12201(b), the ADA expressly disavows preemption of

7

In essence, the Court is called upon to answer two dispositive questions. First, are claims for indemnification or contribution preempted by Title II of the ADA? Second, do Plaintiffs' breach of contract and negligence claims, whether seeking indemnification or contribution, represent an effort to offload their ADA compliance liabilities onto a third party?  The Court analyzes and answers these questions with the assistance of the reasoning contained within the out-of-circuit and state court cases discussed by the parties.

The leading case on preemption arising from Title II of the ADA is *Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597 (4th Cir. 2010). In that case, Archstone, the owner and developer of housing projects throughout the United States, hired Niles Bolton, an architect, to design a number of multi-family apartment buildings on the East Coast. *Id.* at 588. Archstone was subsequently sued by the Equal Rights Center and several other disability plaintiffs on the basis that the apartment buildings designed by Niles Bolton violated Title II of the ADA. *Id.* at 598–99. Archstone ultimately settled with the plaintiffs, and then filed cross-claims against Niles Bolton, under state law, for express and implied indemnity, breach of contract, and professional negligence. *Id.* at 599.[9]

---

state law remedies. Doc. 9 at 3-4. But, in Reply, Defendant argues that 42 U.S.C § 12201(b) serves to expressly allow a state law that offers greater protection to those with a disability, rather than altering the ADA's enforcement scheme. Doc. 32 at 2-3. These arguments certainly provide helpful context for the parties' primary arguments, and the Court considers their impact when determining the threshold question of whether a claim for indemnification or contribution is preempted by Title II of the ADA.

[9] *Niles Bolton Assocs.*, 602 F.3d 597, also concerned violations of the Fair Housing Act ("FHA"), but such discussion is omitted as the case at bar involves the alleged preemption of Plaintiffs' claims by Title II of the ADA, not the FHA. However, I note that federal courts tend to analogize statutes that impose comprehensive regulatory schemes. *See, e.g., Maness v. Village of Pinehurst, North Carolina,* 522 F. Supp. 3d 166, 172 (M.D.N.C. 2021) (applying *Niles Bolton Assocs.*, 602 F.3d 597, in concluding that a claim for indemnification under the Genetic

The Fourth Circuit held that allowing these cross-claims would undermine the purposes of the ADA and therefore the claims were preempted. *Id*. at 601–02. The court first noted that the goal of the ADA is "regulatory rather than compensatory" and that the "principal purpose of the ADA is to '(1) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" *Id.* (quoting 42 U.S.C. § 12101(b)). The court remarked that compliance with the ADA is "nondelegable" in that an owner cannot "insulate himself from liability" by "relinquishing the responsibility for preventing ... discrimination to another party." *Niles Bolton Assocs.,* 602 F.3d. at 602 (citation omitted). The court denied Archstone's indemnity claims as preempted, because "[a]llowing an owner to completely insulate itself from liability for an ADA [] violation through contract diminishes its incentive to ensure compliance with discrimination laws." *Id*. The Fourth Circuit further held, in light of the fact that the owner sought to recover "100% of the losses" at the sites where the architect provided services, that the owner's breach of contract and negligence claims were also preempted because they were purely *de facto* indemnification claims "derived from violations of" the ADA. *Id*.

*Niles Bolton Assocs.*, 602 F.3d 597, squarely stands for the proposition that claims for total indemnity for a violation of the ADA will be preempted. This conclusion is consistent across federal and state courts. *See, e.g., Perez as next friend of F.V. v. Lake Cnty. Rowing Ass'n*, PRL-19-661, 2020 WL 6084082, at *2 (M.D. Fla. Sept. 25, 2020); *Shaw v. Cherokee Meadows, LP*, GKF-17-610, 2018 WL 2967708, at *3 (N.D. Okla June 12, 2018); *Malave v. City of Los Angeles*,

---

Information Nondiscrimination Act ("GINA") was preempted because "GINA, like the ADA and the FHA, is a statute whose principal purpose is regulatory").

SJO-13-4057, 2015 WL 13760313, at *5 (C.D. Cal. Apr. 1, 2015); *Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, FMO-12-551, 2014 WL 12586243, at *5 (C.D. Cal. Sept. 23, 2014); *Rolf Jensen & Associates, Inc. v. Eighth Judicial District Court*, 128 Nev. 441, 447-452, 282 P.3d 743, 747-750 (2012); *United States v. Bryan Co.*, CWR–11-302, 2012 WL 2051861, at *4-6 (S.D. Miss. June 6, 2012).

Informed by the rationale of *Niles Bolton Assocs.*, the Court concludes that if the County had sought full indemnification for its liability under Title II of the ADA, then, such claims would be subject to dismissal under the doctrine of conflict preemption. Less settled, however, is whether Plaintiffs' claims would be preempted by the ADA if they are to be characterized as claims for contribution. Indeed, the court in *Niles Bolton Assocs.*, expressly declined to "reach the question of whether a state-law claim for contribution is preempted under federal law." 602 F.3d. at 604 n.2. But, *City of Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149 (9th Cir. 2017), the only other federal court of appeals case addressing the issue at bar, provides guidance.

In *AECOM Servs., Inc.*, two disabled individuals sued the City of Los Angeles alleging that "a bus system that provides transportation between Los Angeles International Airport and various locations—failed to meet the accessibility standards set forth in Title II of the ADA." 854 F.3d at 1152.[10] In response, the City filed a third-party complaint against the successors-in-interest to two contractors the City had hired to design and/or construct the bus facility alleged to be inaccessible. *Id*. The City brought claims for breach of contract and express contractual indemnity based on contractual language pursuant to which the contractors agreed to "defend, indemnify and hold City

---

[10] *AECOM Servs., Inc.*, 854 F.3d 1149, also addressed alleged violations under the Rehabilitation Act.

10

... harmless" to the extent that any claim "results from the negligent and/or the intentional wrongful acts or omissions of [the contractor]." *See id*. at 1152–53.

On appeal, the Ninth Circuit distinguished *Niles Bolton Assocs.*, and concluded that obstacle preemption did not preclude the City's claims, which it viewed as "functionally seek[ing] contribution." *AECOM Servs., Inc.*, 854 F.3d at 1155–56, 1161. In contrast to the circumstances of *Niles Bolton Assocs.*, where the developer "sought to allocate the full risk of loss" to the architect, the "relevant contractual provisions assign liability to [the contractors] only to the extent that their own actions give rise to liability." *AECOM Servs., Inc.*, 854 F.3d at 1156. The Ninth Circuit thus concluded that the Fourth Circuit's concern "with permitting a responsible party to completely insulate itself" from liability under the ADA was "not in play," and that a "greater concern [wa]s the potential for contractors to shield themselves from any liability they caused under both state contract law and federal disability regulations." *Id*. The court also noted that cities "usually have no choice but to contract out design and construction of public facilities" and therefore that "[p]ermitting enforcement of contract claims seeking to hold a contractor liable for duties necessarily delegated to it does not raise the specter of entirely insulating public entities from ongoing Title II [] liability posed by offloading all the city's responsibilities under those laws." *Id*. at 1158.[11] Further, "precluding contract clauses for contribution reduces a contractor's

---

[11] Applying similar reasoning, courts have distinguished a claim for breach of contract that attempts to offload a non-delegable obligation from a breach of contract action that seeks to hold a party liable for their own independent duties and responsibilities under state law. *See, e.g.*, *Miami Valley Fair Hous. Ctr., Inc. v. Campus Vill. Wright State, LLC*, SLO-10-230, 2012 WL 4473236, at *9 (S.D. Ohio Sept. 26, 2012) ("There is a distinction between (1) a state-law claim seeking indemnification or contribution stemming from proven FHA violations and (2) a state-law contract claim arising from breach of a duty imposed by the particular terms of a contract, rather than duties imposed by the FHA; or a state law negligence claim based on a standard of care not imposed by the FHA.") (citing *United States v. Quality Built Constr., Inc.*, 309 F.Supp.2d 767, 778–779 (E.D.N.C. 2003)).

11

incentives" to ensure full compliance with the federal statutes, which itself "hamper[s] the statutes' regulatory purpose." *Id*. at 1161.

In sum, the Ninth Circuit held that the ADA did not preempt "a city's state-law claims for breach of contract and *de facto* contribution against contractors who breach their contractual duty to perform services in compliance with federal disability regulations." *Id.* at 1152. [12] The Court is persuaded by the reasoning in *AECOM Servs., Inc.*, and adopts it here. [13]

---

Relatedly, it is the substance of Plaintiffs' assertions, rather than a particular label, which governs their claims. *See AECOM Servs., Inc.*, 854 F.3d at 1156 n.3.

[12] Prior to the Ninth Circuit's decision in *AECOM Servs., Inc.*, 854 F.3d 1149, several federal district courts concluded that state-law claims for contribution, as well as indemnification, are preempted by the ADA. *See, e.g., Feltenstein v. City Sch. Dist. of New Rochelle*, CS-14-7494, 2015 WL 10097519, at *3 (S.D.N.Y. Dec. 18, 2015); *United States v. Dawn Props., Inc.*, 64 F. Supp. 3d 955, 960 (S.D. Miss. 2014); *United States v. Murphy Development, LLC*, RLE-08-960, 2009 WL 3614829, at * 2 (M.D. Tenn. Oct. 27, 2009); *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condominium*, KMK-04-7497, 2007 WL 633951 at * 6–7 (S.D.N.Y. Feb. 26, 2007).

But, after *AECOM Servs., Inc.*, at least one out-of-circuit district court was "persuaded by the Ninth Circuit's reasoning, and conclude[d] that the FHA, ADA, and Rehabilitation Act do not preempt contribution crossclaims." *Shaw v. Cherokee Meadows, LP*, GKF-17-610, 2018 WL 3474082, at *2 (N.D. Okla July 19, 2018); *see also Clover Communities Beavercreek, LLC v. Mussachio Architects P.C.*, ___F. Supp. 3d___, 2023 WL 3864965, at *4-6 (N.D.N.Y. June 7, 2023) (adopting the Ninth Circuit's reasoning in *AECOM Servs., Inc.*, and concluding "that the FHA does not preempt Plaintiffs' state-law contribution claim."); *Barrilleaux v. Mendocino Cnty.*, DMR-14-1373, 2018 WL 3585133, at *25 (N.D. Cal. July 26, 2018) (concluding that *Niles Bolton Assoc.*, and its progeny do not support the proposition that "once a party becomes obligated to make an alteration pursuant to an ADA regulation, that duty is per se 'non-delegable,' and can never be transferred to another party pursuant to contract under any circumstances").

[13] The Court is appropriately influenced by both the reasoning in *Niles Bolton Assocs.*, as well as in *AECOM Servs., Inc.*, as the holdings in these cases are not inconsistent, notwithstanding the circuits' differing views on the effect of a congressional omission on a right to indemnification, as discussed *infra*. *See Downing v. Osceola Cnty. Bd. of Cnty. Comm'r*, PGB-16-872, 2017 WL 5495138, at *5 n.5 (M.D. Fla. Nov. 16, 2017) (noting that *AECOM Servs., Inc.*, is distinguished from *Niles Bolton Assocs.*, on the basis that the plaintiff in *AECOM Servs., Inc.*, unlike the plaintiff in *Niles Bolton Assocs.*, did not seek indemnification for the full risk of loss).

The County's claims as alleged in the Complaint do not seek to hold defendant liable for the total monetary damage arising from the Facilities' failure to comply with Title II of the ADA. Rather, the Complaint merely states that County has suffered damages in excess of $50,000, due to Dewberry's alleged breach of contract and negligence, and so the County seeks an award of more than $50,000. *See* Doc. 36 at 9, 16. In "constru[ing] all inferences in the nonmovant's favor," it is reasonable that the only damages sought in the Complaint are those for which the Defendant is actually responsible and liable. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017). Furthermore, the provisions of the contract that the County alleges the Defendant has breached (*id.* at 8-9) do not include any language concerning a contractual right to indemnification. *See* Doc. 5-3 at 1-14. In other words, Plaintiffs' causes of action are fairly characterized as claims for *de facto* contribution, not claims for *de facto* indemnification.[14] Therefore, the reasoning in *AECOM Servs., Inc.*, is highly relevant to the outcome of this case.

The Court notes that Dewberry, not the County, may be "the entity best situated to ensure full compliance … with designing or constructing" the Facilities, and precluding claims for contribution reduces Dewberry's "incentive to" comply with the ADA. *AECOM Servs., Inc.*, 854 F.3d at 1156. Indeed, the Seventh Circuit previously concluded that state law claims that serve to encourage third-party compliance with federal regulatory regimes may "complement[] rather than conflict[]" with federal law. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 578 (7th Cir. 2012) (citing *In re Ocwen Loan Servicing, LLC, Mort. Servicing Litig.*, 491 F.3d 638, 643-44 (7th Cir. 2007)).

---

[14] If the Court were to find Plaintiffs' claims constituted *de facto* indemnification, then the County would have been granted leave to expressly replead a claim for *de facto* contribution, pursuant to Plaintiffs' request. *See* Doc. 35 at 4 n.1.

13

Nevertheless, Defendant argues that the ADA's failure to include a contribution or indemnification remedy warrants a presumption that congress deliberately intended a non-indemnifiable and non-delegable duty for Plaintiffs to comply with the ADA. *See* Doc. 5-1 at 6-8 (citing *Chicago Hous. Auth. v. DeStefano & Partners, Ltd.*, 2015 IL App (1st) 142870, 399 Ill. Dec. 96, 45 N.E.3d 767, in turn citing *Niles Bolton Assocs.*, 602 F.3d at 602). Defendant's argument is rooted *Niles Bolton Assocs.*, where the district court analogized its reasoning to a Fourth Circuit case that precluded indemnity in the context of federal securities laws. *See Equal Rights Center v. Archstone*, 603 F. Supp. 2d 814, 824-825 (D. Md. 2009) (citing *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1103 (4th Cir.1989) (en banc)). On appeal, the Fourth Circuit stated that "the district court correctly used the guidance" in *Baker, Watts & Co.*, 876 F.2d 1101. *Niles Bolton Assocs.*, 602 F.3d at 601. The Fourth Circuit then highlighted its prior statement that "Congress ha[d] not provided a right to indemnification in the federal securities laws under any circumstances." *Id.* at 601 (quoting *Baker, Watts & Co.*, 876 F.2d at 1108). And, just as the lack of an explicit right to indemnification supported preemption in the context of federal securities laws, the Fourth Circuit applied that same reasoning, in combination with other factors, to preclude indemnification of an ADA violation.

However, the Court is persuaded by the reasoning in *AECOM Servs., Inc.*, 854 F.3d 1149. The Ninth Circuit stated, *id.* at 1160: "To the extent that [*Niles Bolton Assocs.*,] relie[d] on congressional *omission* of a federal cause of action for indemnification, it turns the presumption against preemption on its head. The basic premise of the presumption is that absent an affirmative indication to the contrary, a federal regulation will not preempt state law. The failure to provide a federal analogue to a state-law cause of action does not meet this standard."

Here, there is no affirmative indication whereby the ADA should be presumed to preempt state law. Accordingly, Plaintiffs' state law claims for breach of contract and negligence are not preempted by Title II of the ADA, as they constituted permissible claims for *de facto* contribution.

## Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 5) is DENIED in its entirety.

Entered on this 12th day of September 2023.

*s/ James E. Shadid*
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE
